Filed 1/14/15  S.N. v. Super. Ct. Ca4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| S.N., | |
| Petitioner, | E062012 |
| v. | (Super.Ct.No. SWJ1300487) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  John M. Monterosso, Judge.  Petition denied.

Jodi M. VandeWitte for Petitioner.

No appearance for Respondent.

Gregory P. Priamos, County Counsel and Anna M. Marchand, Deputy County Counsel, for Real Party in Interest.

Mother challenges the juvenile court's orders of September 30, 2014, denying her motion to modify a court order under Welfare and Institutions Code section 388[1] and setting a hearing under section 366.26 to consider terminating her parental rights to her son, J.N. (child). Specifically, mother argues that, once the maternal aunt asked for her legal guardianship of the child to be rescinded, the court should have ordered reunification services for mother, or even placement. Mother also argues she established changed circumstances and that placement with her was in the child's best interest. As discussed below, we reject these arguments and deny the petition.

### FACTS AND PROCEDURE

*The Legal Guardianship*

On November 19, 2012, the Riverside Probate Court appointed the child's maternal aunt as his legal guardian, with mother's agreement. Mother struggled with lack of housing and with substance abuse, and experienced multiple failed efforts at treatment.

*Detention*

On July 30, 2013, the Riverside County Department of Public Social Services (DPSS) filed a section 300 petition alleging the legal guardian failed to protect the child in that she abused drugs, lived in an unsafe home from which she was being evicted, engaged in domestic violence with her boyfriend, and allowed her boyfriend, who was on parole for a violent crime and had an extensive drug abuse history, to live in the home

_____

[1] All section references are to the Welfare and Institutions Code unless otherwise indicated.

2

and watch the child, and her own three children, in her absence.  DPSS alleged as to mother that she has a history of abusing drugs and failing to complete treatment programs, which resulted in the legal guardianship.

The juvenile court detained the child and placed him with his paternal great grandmother.

*Jurisdiction and Disposition*

Mother appeared for the jurisdiction and disposition hearing on September 30, 2013.  Neither mother nor the legal guardian contested jurisdiction.  For the purpose of disposition, mother offered stipulated testimony that she had recently completed anger management and a 45-day residential drug treatment program, and that she "actively attends AA/NA meetings."  Mother stated she had been free of drug use for about four months and was actively seeking employment and permanent housing.  Mother stated at that time that she called the child on the telephone once or twice each day, that she wanted her son back and "will do anything that the Court asks of her to see that that happens."  Mother's counsel asked for reunification services.  The parties and the court discussed whether mother was entitled to reunification services under section 361.5, as examined in *In re B.L.* (2012) 204 Cal.App.4th 1111, because the child had been removed from the legal guardian, not from mother.[2]  The court adjourned to the following day to allow the parties to conduct additional research on that issue.

_____

[2]  In *In re B.L., supra,* 204 Cal.App.4th 1111, our colleagues in Division One examined section 361.5, which provides that "whenever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide

*[footnote continued on next page]*

3

On October 1, 2013, the court ruled that DPSS could choose to provide non-statutory reunification services to mother, but that the court could not order DPSS to provide. That is because, as long as the legal guardianship existed, only the legal guardian was entitled to services under section 361.5. The court suggested a section 388 petition might be an appropriate vehicle for mother at a future time if she could become ready to take custody of the child. The court ordered DPSS to provide reunification services to the legal guardian. The court ordered weekly visits for mother, along with reasonable telephone contact. Mother was at that time living in northern California.

*Six-Month Review*

At the six-month review hearing held on April 1, 2014, the juvenile court authorized mother to have "continued and extended visitation so long as she remains clean and sober."

*12-Month Review and Section 388 Hearing*

The 12-month review hearing took place on September 30, 2014. At the legal guardian's request, the court rescinded the legal guardianship so that the paternal great grandmother could continue to care for the child. Counsel and the court entered into a long discussion regarding the proper procedure at that point. The court determined that it should set the section 366.26 selection and implementation hearing, which it did for

---

*[footnote continued from previous page]*
child welfare services to the child and the child's mother and statutorily presumed father or guardians . . . ." The court held that, when a child is removed from a legal guardian's custody, only the legal guardians—and not the parents—are entitled to reunification services. In the present matter, mother does not challenge the juvenile court's reliance on this case when it denied her reunification services at the disposition hearing.

January 28, 2015. The court then held a hearing on mother's section 388 petition, filed September 19, 2014. In the petition, mother asked the court to revoke the legal guardianship that was created on November 19, 2012, and to either: (1) return the child to mother; or (2) offer mother reunification services. The court heard mother's stipulated testimony, reviewed a police report regarding a single-car crash in which mother was involved in April of 2014, reviewed the latest social worker's report in response to the petition, and heard argument from counsel. The court concluded that mother's circumstances were changing, but not changed, and that it would not be in the child's best interest to grant mother's petition. The court also granted de facto parent status to the paternal great grandmother.

Mother initiated this writ proceeding on October 1, 2014.

## DISCUSSION

1. *Mother was Not Entitled to Services as a Non-Custodial Parent*

Mother argues that, once the legal guardianship was ended at the 12-month review hearing, she was entitled to reunification services and/or placement under sections 361.2 and 366.3. We reject this contention.

Section 361.2 requires the juvenile court to place a child, who has been removed from a custodial parent or legal guardian, with a non-custodial, non-offending parent at the jurisdiction and disposition stage if the parent so requests and if placement would not be detrimental to the child. (§ 361.2, subd. (a).) Mother argues that she is analogous to a non-custodial parent, even though she acknowledges that the 12-month hearing was well past the jurisdiction and disposition stage at which section 361.2 applies.

Mother did argue at the disposition hearing on October 1, 2013, that she should receive services as a non-custodial parent under section 361.2 so that she could become ready to take custody of the child. In response, the court ruled that the child would suffer a detriment if returned to mother at that time, "because she's in the beginning stages of her recovery." Mother has not challenged this ruling.

Mother provides no legal authority for her assertion that, absent a finding of detriment, the court was required to place the child with her at the 12-month hearing under section 361.2. Mother has not carried her burden in this proceeding to establish that section 361.2 applies after the jurisdiction and disposition stage.

Section 366.3, subdivision (b), allows the juvenile court to order reunification services to parents after a legal guardianship has been terminated "if it is in the best interests of the child." In addition, the court may place the child with the parents upon a showing "by a preponderance of the evidence, that reunification is the best alternative for the child." (*Ibid.*) However, as the juvenile court ruled at the 12-month review hearing on September 30, 2014, section 366.3, subdivision (b), applies only to legal guardianships that are established by the juvenile dependency court, not to a legal guardianship, such as the one in the present matter, that was created by the probate court. Subdivision (a) of section 366.3 clearly states that the statute applies only where "a juvenile court orders a . . . legal guardianship pursuant to Section 360 or 366.26." Subdivision (b) itself also refers exclusively to "proceedings to terminate a legal

6

guardianship that has been granted pursuant to Section 360 or 366.26."[3]  By its own

terms, section 366.3 does not apply to guardianships created in the probate court.  Neither

has mother provided any legal authority to support her assertion to the contrary.

2. *The Child was Not Without Provision for Support, and Thus There Was No Need for a Subsequent Petition Under Section 342, With An Opportunity for Reunification Services*

Mother argues the legal guardian abandoned the child, which constituted a new

circumstance placing the child at risk, and thus required a new petition under section 342

and a new opportunity for mother to obtain reunification services.

Section 342 requires DPSS to file a subsequent dependency petition when it

discovers that a minor, who is already a dependent child, is subject to "new facts or

circumstances, other than those under which the original petition was sustained, sufficient

to state that the minor is a person described in Section 300."  When DPSS files such a

petition, "All procedures and hearings required for an original petition are applicable to a

subsequent petition filed under this section."  (§ 342)

Mother argued at the 12-month review hearing that the legal guardian's request to

rescind the guardianship was a new circumstance that placed the child at risk and

required DPSS to file a section 342 petition, after which mother may be entitled to

_____

[3]  "Under section 360, a legal guardianship may be ordered by the court if a dependent child's parent or parents waive reunification or family maintenance services and agree to the guardianship.  A legal guardianship may also be created following a parent's failure to reunify with a child.  When this occurs, section 366.26, subdivision (b)(3), provides that, as one of several options for permanency planning, the juvenile court may appoint a guardian for a dependent child and order that letters of guardianship issue."  (*In re Carlos E.* (2005) 129 Cal.App.4th 1408, 1417.)

reunification services. The juvenile court rejected this argument, finding section 342 "completely inapplicable." We agree. Although mother asserts in her petition that the legal guardian's actions to rescind the legal guardianship placed the child in a "position of risk" with the paternal great grandmother as the relative caretaker, this is not so. The evidence in the record shows the child has adjusted well to living with his paternal great grandmother, and that she is willing to adopt him. We see absolutely no risk requiring, or even allowing, the filing of a subsequent petition.

### 3. Due Process

Mother also argues that she has been deprived of due process because she may lose her parental rights to the child without having had the benefit of court-ordered reunification services. We do agree that this is an unusual circumstance. However, after reviewing both the record and the applicable juvenile dependency law, we conclude that, as the juvenile court advised mother from the earliest days of the dependency proceedings, mother's due process rights were served by her ability to ask for the legal guardianship to be terminated and the child placed with her by filing a section 388 petition for modification at any point in the dependency. As DPSS points out, the circumstance that mother may lose her parental rights to the child did not result from a lack of due process provided to mother. It resulted from mother's failure to become a safe and capable parent to the child within the allowable timeframe, given the child's countervailing interest in permanency.

Parental rights are a fundamental liberty interest; in evaluating the procedures by which those interests are severed or interfered with, courts must weigh the private

8

interests affected, and the risk of error created by the state's chosen procedure, and the countervailing governmental interest supporting the procedure. (*Santosky v. Kramer* (1982) 455 U.S. 745, 753-754 [71 L.Ed.2d 599, 102 S.Ct. 1388]; *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 251.) Due process guarantees apply to dependency proceedings. (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1006.)

Here, mother's liberty interest in her parental rights is balanced against the child's interest in stability and permanence. Mother argues the court should have granted her reunification services at the 12-month review hearing after it had terminated the legal guardianship. While this would have served mother's interest, it would have unduly interfered with the child's interest. At the time of the 12-month review hearing on September 30, 2014, the five-year-old child had been removed from the legal guardian's care for 14 months (since July 28, 2013) and from mother's legal custody for nearly two years (since November 19, 2012). As the juvenile court noted at the 12-month review hearing, the concern in this unusual situation is that the child waited for 12 months, and could potentially have waited up to 18 months, while the legal guardian received services. Then, when the guardian voluntarily relinquished the guardianship, mother asked that the child be made to wait another 12 months while mother then also receives services and attempts to reunify. The chosen procedure here, that mother have the option to file a section 388 petition for modification to end the guardianship and regain custody of the child, balances the interests of both mother and the child. If mother were actually ready to care for the child, the child could receive permanence within a reasonable time while mother's interest in her parental rights to the child would also be served. Mother

9

did in fact employ this procedure, although unsuccessfully, at the 12-month review hearing.

We also note that mother did make use of the procedure provided in section 361.2 at the jurisdiction and disposition stage. She was unable to show that she was ready to take custody of the child at that time, which is why the juvenile court found clear and convincing evidence that giving mother custody before she had fully overcome her substance abuse problem would be detrimental to the child. Thus, we conclude that mother received due process during these proceedings.

4. *Section 388 Petition for Modification*

Mother argues the juvenile court erred when it denied her section 388 petition.

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new or changed circumstances exist, and (2) the proposed change would promote the best interest of the child. [Citation.] The parent bears the burden to show both a '"legitimate change of circumstances"' and that undoing the prior order would be in the best interest of the child. [Citation.] The petition is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion. [Citation.]" (*In re S.J.* (2008) 167 Cal.App.4th 953, 959-960 [Fourth Dist., Div. Two].)

In evaluating whether parents have met their burden to show changed circumstances, the trial court should consider: "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers;

10

and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been". (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532.)

Here, the court found that mother's circumstances are improving but not changed. This conclusion is supported by the following evidence. Mother had not done enough to fix the problem that led to the guardianship and in part to the dependency—her long-term drug problem and inability to benefit from drug treatment.[4] Mother had completed a 45-day drug treatment program just as the dependency began, in July of 2013. However, mother could show that she had attended only twelve meetings of NA/AA immediately after completing drug treatment, with no proof of such meetings in the entire year since. Further, Mother was arrested for being under the influence a few months later in December 2013. In addition, mother had declined to drug test while she was in town for the six-month hearing on April 1, 2014, and, as part of the section 388 petition, had provided the juvenile court with the results of a single negative drug test, regarding which the court commented it could not determine whether the urine test had been monitored. This was enough evidence to support the court's conclusion that mother had not established changed circumstances.

As to the best interest of the child, the court's decision is supported by the following evidence. Mother had not visited the five-year-old child at all after a two-hour

_____

[4] Mother admitted to being "an everyday user" of "speed and heroin" when the legal guardianship was put in place and had enrolled in at least two substance abuse programs before successfully completing the one in July 2013.

11

visit while mother was in town for the six-month review hearing on April 1, 2014, and their sole contact was a one- or two-minute telephone call three times per week. In fact, despite being allowed "extended visitation" by the juvenile court, mother visited in person with the child only a few times during the entire dependency, including October 10, 2013 and April 1, 2104. In contrast, the child had been placed with the paternal great grandmother since July of 2013, and this relative caretaker had regularly cared for the child since he was placed in legal guardianship at age 3. Moving the child to mother's care was not in the child's best interest, given that he was in a stable placement with a relative he had known for most of his life, that he had been completely out of his mother's care for the last two years, and that mother had visited him only a few times in the previous year. The juvenile court did not abuse its discretion when it denied mother's section 388 petition.

## DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

MILLER
J.

12